UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCUS SAPP,
    Petitioner,

vs.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:13-cv-109

Beckwith, J.
Wehrman, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Madison Correctional Institution, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ, and petitioner's traverse. (Docs. 3, 11, 18).

**I.    PROCEDURAL HISTORY**

### State Trial Proceedings

On June 18, 2010, the Hamilton County, Ohio grand jury returned a twelve-count indictment charging petitioner with three counts of aggravated murder, three counts of murder, two counts of aggravated burglary, two counts of aggravated robbery, and two counts of felonious assault. (Doc. 10, Ex. 3). The charges stemmed from two separate incidents—the November 14, 2007 robbery and murders of Todd Oliver and Robert Lane in Walnut Hills, Ohio and the January 5, 2008 robbery in Oakley, Ohio, resulting in the felonious assault of Tyler Irvine and the murder of Andrew Cunningham. (*See id.*).

Through counsel, petitioner filed several pre-trial motions, including a motion to suppress. (Doc. 10, Ex. 4). Petitioner moved to suppress "both the out of court identification of the Defendant at a pre-trial line-up by Tyler Irvine and any in-court identification of the Defendant by the same witness which the state may seek to introduce at trial." (*Id.* at 1). After conducting a suppression hearing, the trial court denied the motion. (Pre-trial Transcript pp. 252–462, Doc.

9-2 at PageID 2650–2862).

On May 28, 2010, petitioner was found guilty of one count of aggravated murder, one count of murder, one count of aggravated robbery, one count of aggravated burglary, and two counts of felonious assault in connection with the Oakley incident.  (Doc. 10, Ex. 6).  Petitioner was acquitted of the charges stemming from the Walnut Hills robbery and murders.

Petitioner, through counsel, filed a motion for a new trial and supplemental motion for a new trial (doc. 10, Ex. 7, 8), which were denied by the trial court on June 17, 2010.  (Doc. 10, Ex. 9).  On the same day, petitioner was sentenced to an aggregate prison sentence of twenty-seven years to life without parole.  (Doc. 10, Ex. 1).

## Direct Appeal

On June 23, 2010, petitioner, through counsel, filed a timely notice of appeal to the Ohio Court of Appeals.  (Doc. 10, Ex. 10).  Petitioner raised the following seven assignments of error in his appellate brief:

1. The trial court committed reversible error by failing to sever counts 1 thru six from counts 7 thru 12, which were homicides that occurred on different dates, thus rendering the Appellant's trial fundamentally unfair.

2. The pre-trial identification of the Defendant-Appellant was unnecessarily suggestive and violated due process of law.

3. The Defendant-Appellant had no counsel at a live lineup despite the fact that he had a pending murder charge and the State was arguing that the separate murders were related.

4. The trial court erred to the prejudice of the defendant-appellant by not granting the rule 29 motion as there was insufficient evidence to convict.

5. The trial court erred to the prejudice of the Defendant-Appellant because the verdict was against the manifest weight of the evidence.

6. The Defendant-Appellant was denied due process of law and subject to cruel and unusual punishment when the court sentenced him to a maximum,

consecutive 27 year to life sentence.

    7. The trial court erred when it denied defendant's motion for new trial.

(Doc. 10, Ex. 11). On July 22, 2011, the Ohio Court of Appeals affirmed the judgment of the trial court. (Doc. 10, Ex. 2).

### Ohio Supreme Court

On August 22, 2011, petitioner, through new counsel, filed a notice of appeal to the Ohio Supreme Court. (Doc. 10, Ex. 13). In his memorandum in support of jurisdiction, petitioner raised the following three propositions of law:

1. The First District Court of Appeals' Local Rule 12 impermissibly grants the court of appeals unfettered discretion in placing various cases on accelerated calendar and violates the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

2. An eye-witness identification is inherently unreliable when the witness is shown repeated photographic lineups, told that the suspect is in the lineup, and then a live lineup is done in which the State informs the witness that the suspect is in the lineup.

3. A defendant is deprived the effective assistance of appellate counsel when appellate counsel fails to raise reversible errors on direct appeal.

(Doc. 10, Ex. 8). On November 16, 2011, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 10, Ex. 17).

### Federal Habeas Corpus

Petitioner filed the instant habeas petition on February 14, 2013. (Doc. 3). Petitioner raises the following sole ground for relief in the petition:

> GROUND ONE: The Hamilton County, Ohio, Court of Appeals unreasonably applied *Neil v. Biggers, 409 U.S. 188, 199 (1972)* and *Manson v. Braithwaite, 432 U.S. 98, 114 (1977)* when it determined that the eye-witness identification was reliable and not unduly suggestive. Amendments Five and Fourteen, United

States Constitution.

(Doc. 3).

Respondent has filed a return of writ and contends that petitioner's ground for relief is without merit.   (Doc. 11).

## II. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."   *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied,* 132 S.Ct. 1743 (2012).   "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"   *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams,* ___ U.S. ___, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

5

fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44–45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71–72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In his sole ground for relief, petitioner argues that the pre-trial investigation procedures

6

used during five photographic line-ups were unduly suggestive and that the surviving victim's identification of petitioner was unreliable.  (Doc. 3, p. 18).

The Ohio Court of Appeals was the last court to issue a reasoned decision on the merits of petitioner's claim.  The appeals court overruled petitioner's assignments of error as follows:

> Sapp's second assignment of error alleges that the pretrial identification of Sapp as one of the perpetrators by Tyler Irvine, the victim who survived the Oakley incident, was "unnecessarily suggestive and violated due process."
>
> Identification testimony must be excluded where the pretrial identification procedure are so impermissibly suggestive that they create a substantial likelihood of irreparable misidentification. See *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375; *Simmons v. United States* (1968), 390 U.S. 377, 88 S.Ct. 967; *State v. Norman* (1999), 137 Ohio App.3d 184, 738 N.E. 2d 403.  An identification that is "the result of observations at the times of the crime" does not violate due process. See *State v. Davis* (1996) 76 Ohio St.3d 107, 666 N.E.2d 1099; *State v. Norman,* supra.
>
> A review of the record shows that Irvine's identification of Sapp resulted from his observations at the time of the crime.  Irvine had had ample opportunity to observe Sapp during the commission of the crime, at one point coming face-to-face with Sapp.  Irvine stated that he could not make an identification from the photos he was shown because they were of such poor quality.  But Irvine was positive that he could identify the perpetrator if he could see him in person.  When a live lineup was conducted, Irvine instantly recognized Sapp and identified him as one of the perpetrators.
>
> We hold that, under all the circumstances, Irvine's identification of Sapp as one of the perpetrators was reliable.  See *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819; *Neil v. Biggers*, supra.  The second assignment of error is overruled.

(Doc. 10, Ex. 2, pp. 2–3).[1]

---

1  In denying petitioner's suppression motion, the trial court also found Irvine's identification to be reliable:

> And what I thought was very interesting was [Irvine's] testimony was that as soon as the Defendant walked in, he knew it was him.
>
> That he had a very vivid image of the Defendant in his mind from a very traumatic incident—that he witnessed.  Actually he was victimized in.  So he did get to look at him with a degree of attention.  He saw him four times.  Clearly, he said that image is in my head.  And I do think the four times that he saw were sufficient.  He gave a good description.  His level of certainty was once he saw the live identification, no question; immediately he knew who it was.

7

A conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986)) (in turn quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)).  It is the likelihood of misidentification which violates the defendant's due process right.  *Neil v. Biggers,* 409 U.S. 188, 198 (1972).  *See also Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009).  The due process standard is premised on the concern that the trustworthiness of an eyewitness's identification can be easily undermined by improper police suggestion in circumstances where there already is a danger of misidentification because the witness is called upon to identify a stranger observed only briefly, under poor conditions, at a time of extreme emotional stress and excitement.  *See Manson v. Brathwaite,* 432 U.S. 98, 112 (1977); *Simmons,* 390 U.S. at 383-84; *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976).  Therefore, the determination of whether the eyewitness's identification testimony is admissible at trial turns on the reliability of that testimony.  *Manson,* 432 U.S. at 114; *see also Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981).

The Court must engage in a two-step analysis in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure.  *Mills*, 572 F.3d at 251.  The Court must first consider whether the procedure was unduly suggestive.  *Id.*

---

And I think he was being completely honest.  The pictures are terrible.  I want to see him live because when I see him, I'll know it.  It was a long period of time.  But a year I don't think is too long to question his ability to testify in court.

(Pre-trial Transcript pp. 459–60, Doc. 9-2 at PageID 2858–59).

8

(citing *Ledbetter,* 35 F.3d at 1070-71).  "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."  *Perry v. New Hampshire*, __ U.S. __, 132 S.Ct. 716, 724 (2012) (citing *Manson*, 432 U.S. at 107).  The defendant bears the burden of proving this element.  *Ledbetter,* 35 F.3d at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir. 1992)).

If the Court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial identification was nevertheless reliable.  *Id.*; *see also Neil,* 409 U.S. at 199–200.  The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification.  *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199–200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000); *Ledbetter,* 35 F.3d at 1071.

In the instant case, petitioner does not contend that the Ohio court of appeals used a standard of law contrary to established Federal law, as determined by the Supreme Court.  Instead, petitioner maintains that the Ohio court unreasonably applied controlling federal law to his case.  This Court is mindful that a state court's adjudication is not "unreasonable" "simply because [a federal habeas court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.  Petitioner must show that the state court's application of the above cited Supreme Court precedent was objectively unreasonable.  *Bell*, 535 U.S. at 694.  Petitioner has failed to make such a showing in this case, as the record supports the Ohio Court of Appeals' determination that

the victim's identification was reliable.

Mr. Irvine, the surviving victim from the Oakley robbery, testified that he and his roommate, Mr. Cunningham, grew marijuana in a bedroom on the second floor of their home prior to the robbery. (Pre-Trial Hearing Trans. 331, Doc. 9-2 at PageID 2730). On January 5, 2008, around 9 P.M., he was preparing to take a shower in an upstairs bathroom, when he heard a commotion from downstairs. (*Id.* at 330, 334, 335–36, PageID 2729, 2733, 2734–35). Although he initially suspected it was Mr. Cunningham arriving home, he eventually realized something else was going on when he heard more than one voice. (*Id.* at 336, PageID 2735). He testified that he saw Mr. Cunningham coming up the stairs—blood running down his face—followed by an individual with a rifle. (*Id.*). According to Irvine, when they got to the top of the stairs, the individual hit him in the face with the butt of the rifle, breaking his nose and knocking him to the floor. (*Id.* at 337–38, PageID 2736–37). After striking Irvine, the individual took Mr. Cunningham into the grow room. He subsequently took Cunningham downstairs and returned with plastic bags, demanding that Cunningham put the marijuana into the bags. Irvine testified that he observed him "gun butt" the back of Cunningham's head repeatedly as he led him around the room by the back of his shirt. (*Id.* at 343–344, PageID 2742–43).

Meanwhile, a second individual armed with an AK-47, took Irvine to his bedroom, which was situated across the hall from the grow room. (*Id.* at 339, 341, PageID 2738, 2740). Irvine testified that he "was freaking out asking them what they wanted," to which the second individual responded by smiling at him and stating "we want everything." (*Id.* at 341, PageID 2738). He further stated that "my boy is not fucking around. Give us what we want," and began to look in the closet of his bedroom. (*Id.* at 342–43, PageID 2739–40). When the individual turned his back on Irvine, he ran out of the room, down the stairs and across the street to a neighbor's house.

10

(*Id.* at 349–350, PageID 2748–49).

Following the robbery, the victim provided the police with a description of the suspects. Over the course of the next year, the victim was shown several photo arrays. As noted by the appeals court, the victim maintained that he could not make an identification based upon the photographs shown to him based upon the quality of the photos. Irvine requested a live lineup because, according to his testimony, "I knew in my mind if I were to see this person in person, there is no doubt about it. I would be able to recognize either one." (*Id.* at 367, PageID 2766).

Roughly a year later, Irvine was shown a live lineup. He testified that he immediately recognized petitioner when seeing him in person (*id.* at 370, 413, PageID 2769, 2812), stating that his heart started pounding and he could not take his eyes off him. (*Id.* at 419, PageID 2818). Irvine testified that he did not recall the photos viewed prior or rely on anything from the photo lineups in identifying petitioner. (*Id.* at 410, PageID 2809). Instead, he stated he was certain that petitioner was the individual in his house on January 5, 2008. (*Id.* at 419, PageID 2818).

After a review of the record, the undersigned is convinced that the Ohio Court of Appeals reasonably determined that the victim's identification of petitioner was reliable. Although petitioner contends that Mr. Irvine did not have ample opportunity to view the intruders, the record suggests otherwise. Irvine testified that he saw petitioner on four occasions during the robbery. (*Id.* at 390, PageID 2789). First, Irvine stated that he saw petitioner "[c]lear as day" before he hit him with the butt of the riffle. (*Id.* at 337, 351, 384, PageID 2736, 2750, 2783). Irvine testified that he was face to face with petitioner, roughly five feet away, and that they locked eyes (*Id.* at 384, 421, PageID 2736, 2820). Irvine also observed—from roughly ten to twelve feet away—petitioner's profile as he hit Mr. Cunningham in the back of the head. (*Id.* at 349–50, 388, PageID 2748–49, 2787). He further testified that he saw petitioner on a third and fourth occasion,

11

when petitioner took Cunningham down the stairs to get garbage bags (*id.* at 389, PageID 2788) and when Irvine ran out of the home. (*Id.* at 390–91, PageID 2789–90). During the suppression hearing, Irvine noted that he was not drinking or smoking marijuana prior to the incident (*id.* at 373, PageID 2772), that lights were on in the home (*id.* at 335, PageID 2734), that he had no trouble seeing that evening (*id.* at 377, PageID 2776), and that he was paying attention to the unknown assailants. (*Id.* at 381, PageID 2780). Based on his observations during the incident, Irvine provided the police with a physical description[2] of petitioner, told the police that the intruders' images were locked in his head, and that when he saw the intruders he would know it. (*Id.* at 186, 354–55, 384, PageID 2584, 2553–54, 2783). As noted above, despite the fact that over a year passed between the robbery and the live line-up, Irvine recognized petitioner as soon as he saw him and was completely certain petitioner was the individual in his house on January 5, 2008. (*Id.* at 413, 418, PageID 2812, 2817).

After careful review of the record in this case, the undersigned concludes that the Ohio Court of Appeals reasonably applied the applicable Supreme Court precedents in the adjudication of petitioner's claim. Even assuming without deciding that the identification procedures employed were suggestive, the record supports the Ohio Court of Appeals' determination that Irvine's identification of petitioner was reliable. Petitioner has thus failed to demonstrate that the Ohio appeals court's decision was contrary to or an unreasonable application of Supreme Court precedent. Therefore, petitioner is not entitled to habeas relief based upon Ground One of the petition, his sole ground for relief.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3)

---

2  Petitioner does not challenge the accuracy of Mr. Irvine's description in the petition.

be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in the petition, which has been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:   10/2/14                                           s/ J. Gregory Wehrman
                                                          J. Gregory Wehrman
                                                          United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARCUS SAPP,<br>  Petitioner,<br><br>  vs.<br><br>WARDEN, MADISON<br>CORRECTIONAL INSTITUTION,<br>  Respondent. | Case No. 1:13-cv-109<br><br>Beckwith, J.<br>Wehrman, M.J. |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).